## PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. McCLAIN, Collector.

(Circuit Court, E. D. Pennsylvania. December 17, 1900.)

No. 45, April Sessions, 1900.

1. INTERNAL REVENUE—LEGACY TAXES—CONSTRUCTION OF WAR REVENUE ACT.

Section 29 of the war revenue act of 1898, which imposes a tax upon "any legacies or distributive shares arising from personal property, * * * passing after the passage of this act from any person possessed of such property, either by will or by the intestate laws of any state or territory," applies only to the estates of persons dying after the passage of the act. A trustee who at the time of the passage of the act held personal property upon a testamentary trust, to be distributed at a future date between the then surviving members of a class of legatees named by the testator, is not a "person possessed" of such property, within the meaning of the statute, so as to render it subject to the tax when it passes from him to the distributees.

2. SAME—RECOVERY OF TAXES PAID—INTEREST.

One from whom internal revenue taxes have been illegally exacted, and who pays the same under threats of distraint, and acts promptly in prosecuting his claim for their recovery, is entitled to recover interest from the time of their payment.

Action to Recover Internal Revenue Taxes Paid. On demurrer to declaration.

John G. Johnson, for plaintiff.
James B. Holland, U. S. Atty., for defendant.

J. B. McPHERSON, District Judge. This is an action to recover back a sum of money collected from the plaintiff under the following circumstances: The residuary clause of the will of Isaiah V. Williamson, who died in 1889 in the city of Philadelphia, directed his executors to transfer to the plaintiff the residue of the estate, to be held for accumulation during 10 years after his death, and at the end of that period to be divided among such of his grandnephews and grandnieces as might then be living. In April, 1899, the trustee filed its account in the orphans' court of Philadelphia county, and the whole of the balance appearing thereon, which amounted to nearly $6,000,000, without any deduction for legacy tax that might be due to the United States, was distributed among the persons described in the residuary clause of the will. After the distribution had been made, the defendant, who is the collector of internal revenue for this district, demanded a legacy tax, under section 29 of the war revenue act of 1898, and, upon the refusal of the plaintiff to pay, was, on April 17, 1900, about to collect the tax and a penalty of 5 per cent. by distress, when payment was made under protest. The sum thus paid was $280,021.33, but as the tax had been wrongly assessed according to a rate determined by the value of the whole estate, and not by the value of each legacy (Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969), the defendant on June 29, 1900, repaid the sum of $94,660.07. The amount in controversy, therefore, is $185,-361.26, with interest from April 17, 1900, and the sum of $1,151.69,

being the interest upon $94,660.07 from April 17th until the day when it was repaid.

The question for decision is this: Does section 29 of the act of June 13, 1898, impose any tax upon the estate of a person who died before the act was passed? The section is as follows:

"That any person or persons having in charge or trust as administrators, executors, or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any state or territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be, and hereby are, made subject to a duty or tax, to be paid to the United States. * * *"

It will be observed that this section lays a tax upon such legacy or distributive share as may arise from personal property that may pass after the passage of this act from any person possessed of such property to any person or body politic or corporate, in trust or otherwise, by will or by the intestate laws. The tax is laid upon certain legacies or distributive shares; not upon all legacies or shares, but only upon such as pass after the passage of the act. But, in ordinary speech, a legacy or distributive share (both words necessarily implying an antecedent death) passes immediately upon the death of the testator or intestate; and unless, therefore, other language in the section indicates that some other time is in contemplation, the conclusion would be inevitable that the act only taxes legacies or shares passing from persons who died after June 13, 1898. Let us look, then, at the rest of the section, in order to discover, if possible, the legislative intention upon this subject. The legacy or share, we further observe, is described as "arising from personal property"; and if it is the "property" that passes, and not the legacy or share, the passing must still be after the passage of the act. The method of passing is directly described, namely, "either by will or by the intestate laws of any state or territory," and this also necessarily implies that the person from whom the property is to pass must die before the passing can take place. Therefore, as the passing of the property or of the legacy or share must be, after the passage of the act, so must be the death. It follows inevitably, as I think, that the "person possessed," from whom the property is to pass, must die after the passage of the act, and that the passing must be by his will or by the operation of the intestate laws.

It is at this point that we encounter the argument of the government. Its right to the tax must depend upon the construction to be placed upon the phrase "from any person possessed of such property." If, as I believe, this phrase refers to the testator or the person dying intestate, clearly there was no claim to the tax now in dispute, because Mr. Williamson died before the passage of the act, possessed at the time of his death of the personal property from which the legacies arose, and the property passed by his will to a body corporate,

to be held in trust, and this occurred several years before the statute took effect. The government's argument, therefore, is that the words "any person possessed of such property," in their application to the facts of the present case, mean the trustee to whom the residuary estate was directed to be paid; that the trustee is the person from whom the property is to pass; and that the property did not thus pass until the period for accumulation had come to an end, because only then could it be known to whom the legacies should be paid. The argument concedes that the legacies would not have been taxed by the section, if they had been vested, but asserts the right to tax because they were contingent when the act was passed, and did not vest until the end of the period of accumulation in 1899.

I have already given some reasons for declining to admit the correctness of this construction. It seems to me quite clear that the words do not bear the meaning contended for by the government, and that the section does not tax any legacy or distributive share unless the testator or intestate died after the passage of the act. This, I think, is the ordinary and natural meaning of the words employed; and, in accordance with well-known principles of statutory interpretation, such meaning should prevail. It is only by what I cannot help but regard as a strained and difficult construction that the phrase in question, "person possessed," can be made to include such a person as the present plaintiff. The manner in which the personal property is to pass from "the person possessed of such property" is either by "will or by the intestate laws of any state or territory." Certainly, as we ordinarily use these words, when we speak of property passing from a person possessed thereof by will or by the intestate laws, we mean by his own will, or by the immediate operation of the intestate laws at the time of his death. But, if the government's argument be sound, this cannot be the meaning here. That argument requires us to say that "the person possessed" here is the trustee, but nevertheless the property is to pass, not by his own will, but by the will of the creator of the trust. This is a conceivable, although surely not a natural, construction; but by what process of interpretation can a similar meaning be put into the phrase "by the intestate laws of any state or territory"? Their operation is immediate upon the death of the owner, and it is a contradiction in terms to speak of personal property passing by the intestate laws from an executor or testamentary trustee. When, therefore, the act speaks of personal property "passing after the passage of this act from any person possessed of such property  *  *  *  by the intestate laws of any state  *  *  *  to any person  *  *  *  in trust or otherwise," it could only have meant such passing upon a death occurring after the date of the act. And this, of course, would leave untaxed the personal property of intestates who had died before the act was passed. If this is true concerning intestates, is it reasonable to suppose that testators are dealt with differently in the same sentence, and without a word to indicate that a different treatment is proposed? But, upon the government's construction, as soon as we say "passing by will" we have this curious difference: The "person

possessed" now includes not only the testator himself, but also his trustee, but "by will" never means the will of the "person possessed," if such person is a trustee, although the act is speaking of property passing by will from such person.

It is also to be observed that the act contemplates the passing of the property from the "person possessed" to some other person "in trust or otherwise." Certainly, as it seems to me, these are unusual words to use, if the "person possessed" is a trustee, to whom the property has already passed in trust; for the words "passing * * * in trust," in their ordinary and natural meaning, refer to a trust created by the "person possessed," and if such person is already a trustee he cannot do more than transmit the property under the trust that has been imposed upon it by the original possessor. And, when it is further noticed that the property is to pass "by will * * * in trust," it is reasonably certain that property in the hands of a trustee, who could not transmit it by will, could not have been in the legislative mind.

Moreover, looking at the remainder of the section, which taxes "any personal property or interest therein transferred by deed, sale or gift, intended to take effect in possession or enjoyment after the death of the grantor or bargainer," it is beyond dispute that this points distinctly to a death after the passage of the act; for it cannot be supposed that the statute was intended to have a retroactive effect, and to tax all such transactions, however remote they may have been in point of time. It is very unlikely, I think, that this part of the section applies only to a death occurring after the passage of the act, while the earlier portion of the same sentence is to be so construed as to apply to cases where property passes from the testator or intestate before the passage of the act, as well as afterwards.

I think enough has been said to show that, while "the exact meaning of the statute is not free from perplexity" (to use the language of Mr. Justice White in Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969), it is only after resolving every doubt in favor of the government that the sense contended for can be read into the act; and even then the construction is strained and unnatural. This being so, I think the government's contention should not prevail, upon the well-understood principle of taxation,—that a doubtful tax does not exist. Before the property of a citizen can be taken under the exercise of the taxing power, it is necessary that the statute be clear and unambiguous, so that there may be no doubt about the intention of the state to take the property of the citizen for public purposes. As I have attempted to show, and as I think must be conceded, the section under consideration certainly cannot be said to express clearly the meaning for which the government argues, while the opposite construction seems to give a much more natural and reasonable meaning to the words.

Without prolonging the discussion, I am therefore of opinion that section 29 was only intended to apply to the estates of persons dying after the act was passed, and accordingly the demurrer must be overruled.

As there is no dispute about the facts, I suppose the government expects this decision to be the end of the controversy in this court. In that event, the remaining question is whether the plaintiff is entitled to interest. Upon this point I entertain no doubt. The money was exacted under the threat of exercising the government's power to distrain, and having been thus exacted without lawful right, and the plaintiff having acted promptly in prosecuting its claim, it seems indisputable that the ordinary compensation for being deprived of the money should be awarded. Erskine v. Van Arsdale, 15 Wall. 75, 21 L. Ed. 63.

Judgment may be entered for the sum of $185,361.26, with interest from April 17, 1900, to December 17, 1900, being $7,414.45, and for the additional sum of $1,151.69, making a total of $193,927.40.